UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GRASSY SPRAIN GROUP, INC.,

                         Plaintiff,

    -against-

CREDIT SMART, LLC, and its owners, members, officers
and/or principals, DAWN VENERONI, BARRY
CALVAGNA, ANTHONY PICONE and LAUREN
PICONE,

                        Defendants.
------------------------------------------------------------------X

Civil Action No. 14-cv-5622

**FIRST AMENDED
COMPLAINT**

      Plaintiff GRASSY SPRAIN GROUP, INC. (hereinafter "Plaintiff" or "Grassy"), by and through its counsel, Harrington, Ocko & Monk, LLP, as and for its First Amended Complaint against Defendants CREDIT SMART, LLC ("Credit Smart"), and its owners, members and/or principals, DAWN VENERONI ("Veneroni"), BARRY CALVAGNA ("Calvagna"), ANTHONY PICONE ("A. Picone"), and LAUREN PICONE ("L. Picone", together with "Credit Smart", "Veneroni" and "A. Picone", collectively "Defendants"), alleges the following:

## PARTIES

      1.    Plaintiff Grassy is a Florida corporation with its principal place of business located at 9858 Clint Moore Road, Suite C 11, Boca Raton, Florida.

      2.    Upon information and belief, Defendant Credit Smart is a New York limited liability company with its principal place of business located at 66 Commack Rd., Suite 300, Commack, NY 11725. Upon information and belief, Defendant Credit Smart is in the business of debt purchase and collection.

3. Upon information and belief, Defendants Veneroni, Calvagna, A. Picone and L. Picone are, and at all relevant times, were owners, officers, members and/or principals of Defendant Credit Smart, with their principal offices and business located at the offices of Defendant Credit Smart in Commack, NY.

## VENUE AND JURISDICTION

4. Venue is proper in this Court in New York pursuant to 28 U.S.C. § 1391(b), based upon Defendant's principal place of business being located in Suffolk County.

5. Venue is proper in this Court in New York, as the parties agreed in a written contract that any legal action between Plaintiff and Defendant Credit Smart regarding their Agreement would be adjudicated in New York State.

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the amount in controversy is over $100,000, exclusive of interest and costs, and there is complete diversity of citizenship as between Plaintiff and Defendants.

7. This Court has personal jurisdiction over the parties pursuant to contractual agreement, and because upon information and belief, Defendant Credit Smart has its principal place of business located in this county, and upon information and belief, Defendants Veneroni, Calvagna, A. Picone and L. Picone have their principal offices located in this Suffolk County, New York.

## BACKGROUND

8. Upon information and belief, Defendant Credit Smart is a New York limited liability company, located in Commack, New York, and is in the business of debt purchase, collection and sale.

9. Upon information and belief, at all relevant times described herein, Defendants, Veneroni, Calvagna, A. Picone and L. Picone were owners, officers, members and/or officers of Defendant Credit Smart.

10. Upon information and belief, Defendants Veneroni, Calvagna, A. Picone and L. Picone, acting alone or in concert, formulated, directed, controlled or participated in the actions of Defendant Credit Smart described herein.

11. Plaintiff and Defendant Credit Smart entered into a contract entitled Account Purchase Agreement ("Agreement") with an effective date of July 29, 2014.

12. Pursuant to the terms of the Agreement, Plaintiff purchased "account(s)", "account file(s)", and "transfer documents" from Defendant Credit Smart, as those terms are defined in the Agreement.

13. According to the terms of the Agreement, on the "transfer date", Defendant Credit Smart was required to make available to and/or deliver Plaintiff all required "transfer documents", as well as "account file(s)" and "account documents" relating to the "account(s)". The "transfer date" is defined in the Agreement as no later than thirty (30) days after the Closing Date on July 29, 2014.

14. Pursuant to §2.5 of the Agreement, Defendant Credit Smart was obligated to pay over to Plaintiff any payments on "account(s)" purchased by Plaintiff under the Agreement, but received by Defendant Credit Smart or its agent(s) after the "cut-off date" specified in the Agreement; that date being defined as July 18, 2014. Under the terms of the Agreement, payments received by Defendant Credit Smart or its agent(s) after the "cut-off date" were to be paid over and/or delivered to Plaintiff by Defendant Credit Smart on a schedule set out in the Agreement, as follows: (a) August 1, 2014, (b) August 15, 2014, (c) September 2, 2014, (d)

3

September 15, 2014, and (e) any residual payments received after September 15, 2014, not later than thirty (30) days after receipt by Defendant Credit Smart.

15.     Pursuant to §4.2 of the Agreement, between the "cut-off date" and thirty (30) days following the "Closing Date", Defendant Credit Smart was obligated to continue (or have its designated agent) servicing "account(s)" purchased by Plaintiff, subject to the obligations of Defendant under §2.5 of the Agreement.

16.     Under §6.1 of the Agreement, Seller, Defendant Credit Smart, has an obligation to repurchase any of the accounts sold to Plaintiff Grass Sprain, if (a) no payment is received on any receivable amount within 60 days of the cutoff date of July 18, 2014, and (b) written notice of same is provided by Plaintiff Grassy Sprain to Defendant Credit Smart on or before 90 days of the transfer date of August 30, 2014.

17.     Pursuant to §8.1 of the Agreement, Defendant Credit Smart (and its principals, owners, officers and members Veneroni, Calvagna, A. Picone and L. Picone) was obligated to disclose certain "proceedings against [Credit Smart]" pending or threatened before or by any state or Federal regulatory body, administrative agency or other government instrumentality; and in breach of this obligation, Defendants failed to make the required disclosures.

18.     The representations and warranties made by Defendants under §8.1 of the Agreement were material to Plaintiff, and impacted the decision as to whether or not to purchase such accounts and impacted amount of money Plaintiff was willing to and did pay to Defendant credit Smart for the "account(s)". Had Plaintiff known of any pending or threatened proceedings as to Defendants by any Federal regulatory body or agency regarding the conduct of the Defendants as to some or all of the "account(s)", Plaintiff would not have agree to purchase the

"account(s)" at all, or would not have agreed to pay, and did pay the amount provided for in the Agreement.

19. Upon information and belief, after the "cut-off date" of July 18, 2014, Defendant Credit Smart (or its agents) collected and/or received not less than $78,729.56 on the "account(s)" purchased by Plaintiff under the Agreement, in addition to an unknown amount of money or checks paid to or obtained by Defendant Credit Smart (or its designated agents) (the "Collected Amount") on the "account(s)" purchased by Plaintiff.

20. Upon information and belief, of the Collected Amount, Defendant Credit Smart paid over only $25,252.76 to Plaintiff, as of the date of this Complaint, but has failed to pay over to Plaintiff other money or checks collected or obtained by Defendant Credit Smart (or its agents).

21. Upon information and belief, under the terms of the Agreement, Defendant Credit Smart owes Plaintiff at least $54,138.65, which amount includes payments or checks collected by Defendant Credit Smart or its designated agents after the "cut-off date", on "account(s)" purchased by Plaintiff, but not paid to Plaintiff, plus a credit of $630.96 to Plaintiff for a returned check, and a reduction in purchase price balance of $78.07, as well as the amount of money and checks collected by Defendant Credit Smart (or its designated agents) on the "account(s)", but not disclosed to Plaintiff.

22. Upon information and belief, Defendant Credit Smart has failed to pay to Plaintiff the amount of at least $54,138.65, as set forth in the Schedule in §2.5 of the Agreement, in addition to other money or checks collected by Defendant Credit Smart (or its designated agents) from "account(s)" owned by Plaintiff, but not disclosed by Defendants.

23. In addition to its failure to pay to Plaintiff amounts due under §2.5 of the Agreement, upon information and belief, Defendant Credit Smart (or its designated agents) failed to continue to fully service the purchased "account(s)" of Plaintiff for a period between the "cut-off date" of July 18, 2014, and for thirty (30) days after the Closing Date (July 29, 2014), as required under §4.2 of the Agreement.

24. In addition, upon information and belief, Defendant Credit Smart failed to deliver and/or make available to Plaintiff all required "account files", "account documents", and "transfer documents", as required under §§3.1 and 3.2 of the parties' Agreement.

25. Upon information and belief, in or about October 2014, Plaintiff Grassy Sprain provided written notice to Defendant Credit Smart of the failure of approximately 186 accounts, purchased by Grassy Sprain under the Agreement, to make payments on receivables within 60 days of the cutoff date provided for in the Agreement. Upon information and belief, such written notification to Defendant Credit Smart was made within 90 days of the transfer date.

26. Upon information and belief, Defendant Credit Smart has refused to repurchase these accounts, which are worth approximately $325,722.00.

27. Upon information and belief, Defendants Veneroni, Calvagna, A. Picone and L. Picone were aware, and knew of the terms of the Agreement between Plaintiff and Defendant Credit Smart.

28. Upon information and belief, despite the knowledge of Defendants Veneroni, Calvagna, A. Picone and L. Picone of the terms of the Agreement, Defendants Veneroni, Calvagna, A. Picone and L. Picone directed Defendant Credit Smart and/or its designated agents, not to make payments to Plaintiff of at least $54,138.65, in addition to other money or checks, as required under the Agreement, causing Defendant Credit Smart to breach the Agreement.

29. Upon information and belief, Defendants Veneroni, Calvagna, A. Picone and L. Picone improperly diverted and/or utilized monies for their own uses and purposes, which monies should have been paid to Plaintiff by Defendant Credit Smart or its designated agents, under the terms of the parties' Agreement.

30. Upon information and belief, at the time Defendant Credit Smart entered into the Agreement with Grassy Sprain, the individual Defendants knew that Credit Smart did not have sufficient assets or capitalization to fulfill its repurchase obligations under §6.1 of the Agreement, and if called upon to abide by this obligation, Credit Smart could not do so.

31. Upon information and belief, despite representations and warranties of Defendants to the contrary, at or about the time Defendants negotiated and executed the Agreement, the Federal Trade Commission ("FTC") was investigating, and had threatened or initiated proceedings against Defendants, which Defendants were required to disclose under the parties' Agreement.

32. On or about August 5, 2014, the FTC sued Defendants and others in Federal Court in the Eastern District of New York, alleging that Defendants had engaged in conduct that violated the Fair Debt Collections Practices Act, and various FTC Act laws. *U.S.A. v. Credit Smart, LLC*, Case No. CV-14-4650 (E.D.N.Y. Aug. 5, 2014).

33. Upon information and belief, some or all of the "account(s)" sold by Defendant Credit Smart to Plaintiff under the Agreement were part of the FTC action against Defendants.

34. Upon information and belief, on or about August 7, 2014, Defendants entered into a stipulation with the FTC, which secured entry of a judgment against the Defendants and others, in the amount of $1.2 million regarding the action brought against them by the FTC.

## AS AND FOR A FIRST CAUSE OF ACTION
## (Breach of Contract Against Defendant Credit Smart)

35.     Plaintiff repeats and realleges paragraphs 1 through 34 as if fully set forth herein.

36.     Plaintiff and Defendant Credit Smart entered into a written contract (the Account Purchase Agreement) whereby it was agreed that Defendant would pay over to Plaintiff money received on "account(s)" sold to Plaintiff, but obtained by Defendant Credit Smart (or its agents) after the "cut-off date" of July 18, 2014, set forth in the Agreement.

37.     Pursuant to the parties' Agreement, Defendant Credit Smart (or its agent(s)) was obligated to service the "account(s)" purchased by Plaintiff until at least August 29, 2014.

38.     Under the Agreement, Defendant Credit Smart was also to make available and/or deliver to Plaintiff "account files", "account documents" and "transfer documents" related to all "account(s)" purchased by Plaintiff under the Agreement.

39.     Plaintiff faithfully performed all of its obligations under the parties' Agreement.

40.     Upon information and belief, Defendant Credit Smart is in breach of the express terms of the Agreement, including but not limited to, failure to make payments to Plaintiff on "account(s)" purchased by Plaintiff in the amount of at least $54,138.65, in addition to other money and checks obtained by Defendant Credit Smart or its designated agents, but not disclosed to Plaintiff, as of the date of this Complaint.

41.     Upon information and belief, Defendant Credit Smart breached §4.2 of the Agreement by failing to continue to service the "account(s)" purchased by Plaintiff from July 29, 2014 to August 29, 2014, and/or failing to ensure its agent(s) serviced these "account(s)".

42.     Upon information and belief, Defendant Credit Smart also breached the Agreement, §§3.1, 3.2, by failing to deliver and/or make available to Plaintiff "transfer

8

documents", "account files" and "account documents" for all "account(s)" purchased by Plaintiff from Defendant Credit Smart under the Agreement.

43. Upon information and belief, Defendant Credit Smart breached §8.1 of the Agreement by failing to inform Plaintiff that prior to the effective date of the Agreement, the FTC had threatened or initiated proceedings against Defendant Credit Smart regarding that which Defendant Credit Smart was required to disclose under §8.1(g) of the parties' Agreement.

44. Upon information and belief, Defendant Credit Smart has continued to breach the Agreement, despite notice being provided by Plaintiff to Defendant, in that Defendant failed to make payments to Plaintiff pursuant to the parties' Agreement, failed to make available and/or deliver "transfer documents", "account documents" and "account files" to Plaintiff, failed to service or have its designated agents service the "account(s)", and failing to disclose to Plaintiff the FTC proceedings as to the "account(s)".

45. As a result of Defendant Credit Smart's knowing and willful breach of the Agreement, Plaintiff has been damaged in the amount of not less than $100,000.00, plus interest and costs in this action.

46. Under the terms of §17.10 of the Agreement, if Plaintiff is deemed the prevailing party in this action, Plaintiff is entitled to an award of attorneys' fees and costs in bringing this action.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Unjust Enrichment Against Defendants Credit Smart, Veneroni, Calvagna, A. Picone and L. Picone)

47. Plaintiff repeats and realleges paragraphs 1 through 46 as if fully set forth herein.

48. Plaintiff has provided money to Defendant Credit Smart regarding the purchase of certain "account(s)" pursuant to the Agreement, and Defendant to abide by its obligations under the Agreement.

49. Upon information and belief, as a result of Plaintiff paying monies to Defendant Credit Smart under the Agreement, Defendants Veneroni, Calvagna, A. Picone and L. Picone have obtained monies from Plaintiff in conjunction with the Agreement.

50. Upon information and belief, Defendants Veneroni, Calvagna, A. Picone and L. Picone obtained some or all of the money paid by Plaintiff to Defendant Credit Smart under the Agreement, and utilized and/or diverted such funds for their own purposes.

51. Upon information and belief, Defendants Veneroni, Calvagna, A. Picone and L. Picone diverted funds obtained by Defendant Credit Smart from "account(s)" purchased by Plaintiff, and utilized such funds for their own purposes.

52. Upon information and belief, Defendant Credit Smart obtained money or checks from "account(s)" purchased by Plaintiff, but kept and used such money or checks, which money or checks should have been paid over to Plaintiff under §2.5 of the Agreement.

53. As a result of the illegitimate conduct of Defendants Credit Smart, Veneroni, Calvagna, A. Picone and L. Picone, Defendants have been unjustly enriched at the expense of Plaintiff, causing injury and damage to Plaintiff, in the amount of not less than $100,000.00, plus interest.

54. By virtue of the intentional tortious conduct of these Defendants, Plaintiff is entitled to punitive damages in an amount to be proven at trial, as well as attorneys' fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Tortious Interference with Contract Against Defendants Veneroni, Calvagna, A. Picone and L. Picone)

55.     Plaintiff repeats and realleges paragraphs 1 through 54 as if fully set forth herein.

56.     Plaintiff entered into a written Agreement with Defendant Credit Smart.

57.     Pursuant to §2.5 of the Agreement, Defendant Credit Smart is obligated to pay over to Plaintiff payments on "account(s)" purchased by Plaintiff under the Agreement, which are received by Defendant Credit Smart or its agents after July 18, 2014, the "cut-off" date.

58.     Pursuant to §§3.1 and 3.2 of the Agreement, Defendant Credit Smart was to deliver and/or make available to Plaintiff "account files", "account documents", and "transfer documents" by no later than thirty (30) days after the Closing Date of the Agreement, August 29, 2014.

59.     Pursuant to §4.2 of the Agreement, Defendant Credit Smart (or its agent(s)) was obligated to continue servicing "account(s)" purchased by Plaintiff within thirty (30) days after the Closing Date, or until August 29, 2014.

60.     Pursuant to §8.1 of the Agreement, Defendant Credit Smart (and its principals, owners, officers and members Veneroni, Calvagna, A. Picone and L. Picone) was obligated to make disclosure of certain "proceedings against [Credit Smart]" pending or threatened before or by any state or Federal regulatory body, administrative agency or other government instrumentality; and yet failed to make such required disclosures.

61.     Upon information and belief, Defendants Veneroni, Calvagna, A. Picone and L. Picone were aware of the terms of §§2.5, 3.1, 3.2, 4.2 and §8.1 of the Agreement between Plaintiff and Defendant Credit Smart.

11

62. Upon information and belief, despite knowledge of the requirements of §2.5 of the Agreement, Defendants Veneroni, Calvagna, A. Picone and L. Picone directed Defendant Credit Smart to breach the Agreement, and not to make required payments to Plaintiff.

63. Upon information and belief, despite knowledge of the requirements of §§3.1 and 3.2 of the Agreement, Defendants Veneroni, Calvagna, A. Picone and L. Picone directed Defendant Credit Smart not to deliver and/or make available to Plaintiff "account files", "account documents" or "transfer documents".

64. Upon information and belief, despite knowledge of the requirements of §4.2 of the Agreement, Defendants Veneroni, Calvagna, A. Picone and L. Picone directed Defendant Credit Smart and/or its agents not to continue servicing "account(s)" purchased under the Agreement for a period of thirty (30) days after the Closing Date.

65. Upon information and belief, despite knowledge of the repurchase obligations of Defendant Credit Smart under §6.1 of the Agreement, Defendants Veneroni, Calvagna, A. Picone and L. Picone directed Defendant Credit Smart not to repurchase "dead" accounts, despite proper, and timely written notification from Plaintiff.

66. Upon information and belief, Defendants Veneroni, Calvagna, A. Picone and L. Picone directed Defendant Credit Smart not to disclose to Plaintiff the threatened or pending proceedings initiated by the FTC against Defendants, in violation of §8.1(g) under the Agreement.

67. Upon information and belief, the conduct of Defendants Veneroni, Calvagna, A. Picone and L. Picone, in knowingly causing and/or directing Defendant Credit Smart to breach the terms of the Agreement with Plaintiff, has caused injury and damage to Plaintiff, and

Plaintiff is entitled to recover damages, in an amount of not less than $150,000.00, as well as interest and attorneys' fees and costs.

### AS AND FOR A FOURTH OF ACTION
### (Fraud Against All Defendants)

68.  Plaintiff repeats and realleges paragraphs 1 through 67 as if fully set forth herein.

69.  Upon information and belief, during discussions and negotiations leading up to Plaintiff and Defendant Credit Smart entering into their written Agreement, Defendants knew or should have known that the they were under investigation by the FTC regarding some or all of the "account(s) to be purchased by Plaintiff under the Agreement, and that the FTC had threatened or initiated proceedings against Defendants as to the "account(s)".

70.  Upon information and belief, Defendants did not inform or disclose to Plaintiff that Defendants were under investigation by the FTC, and/or the FTC had threatened and/or initiated proceedings against Defendants regarding some or all of the "account(s)" being sold by Defendant Credit Smart to Plaintiff pursuant to the written Agreement.

71.  Upon information and belief, Defendants knew or should have known whether they were being investigated by, or had threats of the initiation of proceedings against them by the FTC regarding some or all of the "account(s)", and knew or should have known that this was material information to Plaintiff, and would have an impact on Plaintiff's decision to enter in the Agreement, and/or how much to pay for the "account(s)" under the Agreement.

72.  Upon information and belief, had Plaintiff been advised by Defendants that they were all under investigation by the FTC regarding some or all of the "account(s)", and that the FTC had threatened or initiated proceedings against Defendants regarding some or all of the

"account(s)", Plaintiff would have either not purchased the "account(s)", or paid substantially less money for the "account(s)".

73. Pursuant to §8.1(g) of the written Agreement between Defendant Credit Smart and Plaintiff, Defendant Credit Smart (and its principals, officers, owners and members) represented and warranted that there were no threatened or pending proceedings against Defendant Credit Smart by any Federal regulatory body or administrative agency as some or all of "account(s)".

74. Upon information and belief, contrary to the representations, warranties and statements of Defendants to Plaintiff in §8.1(g) of the Agreement, Defendants failed to disclose that the FTC was investigating Defendants, and had threatened legal action and proceedings against all of the Defendants of a kind that was required to be disclosed under the parties' Agreement.

75. In coming to its decision to purchase the "account(s)" and enter into the written Agreement with Defendant Credit Smart, and to pay the amount provided for in the Agreement, Plaintiff relied on the representations, warranties and statements made by Defendant Credit Smart (and its principals, officers, owners and members, including but not limited to, Defendants Veneroni, Calvagna, A. Picone and L. Picone).

76. Upon information and belief, the representations, statement and warranties of Defendant Credit Smart (and its principals, officers, owners and members, including but not limited to, Defendants Veneroni, Calvagna, A. Picone and L. Picone), were material representations, for the purpose of Plaintiff's decision to enter into the written Agreement, and for the amount provided for in that Agreement.

77. Upon information and belief, at the time Plaintiff and Defendant Credit Smart executed the Agreement, Defendants knew that their representations, statements and warranties that there were no pending or threatened proceedings by a Federal regulatory body or agency which were required to be disclosed were false, and that Plaintiff relied on these false statements by Defendants in entering into the written Agreement, and for the purchase price provided.

78. As a result of the fraud and false statements, representations and warranties of Defendants, Plaintiff has been damaged and suffered injury in an amount to be determined at trial, but not less than $150,000.00, as well as attorneys' fees and costs.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Contract Against Credit Smart)

79. Plaintiff repeats and realleges paragraphs 1 through 78 as if fully set forth herein.

80. Plaintiff and Defendant Credit Smart entered into a written contract (Account Purchase Agreement), whereby it was agreed that under §6.1, Defendant is obligated to repurchase any accounts obtained by Grassy Sprain, if those accounts did not make payments for 60 days following the cutoff date, if given written notice of same within 90 days of the transfer date, with supporting documentation.

81. Upon information and belief, at least 186 accounts purchased by Grassy Sprain from Credit Smart, worth an estimated $325,000, did not make payment on receivables within 60 days after the cutoff date.

82. Upon information and belief, Grassy Sprain provided written notice with supporting documentation to Credit Smart within 90 days of the transfer date of the failure of these 186 accounts to make payments, and demanded that Credit Smart repurchase these accounts as required under §6.1 of the Agreement.

83. Plaintiff faithfully performed all of its obligations under the Agreement.

84. Upon information and belief, Defendant Credit Smart is in breach of the Agreement, in particular §6.1, by refusing to repurchase at least 186 "dead" accounts from Grassy Sprain.

85. Upon information and belief, as a result of such knowing and willful breach of §6.1 of the Agreement, and refusal of Defendant Credit Smart to repurchase "dead" accounts, Plaintiff has been damaged by as much as $325,000.

86. Under §17.10 of the Agreement, Plaintiff is entitled to attorneys' fees and costs, if deemed the prevailing party in this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Piercing the Corporate Veil Against Defendants Veneroni, Calvagna, A. Picone and L. Picone)

87. Plaintiff repeats and realleges paragraphs 1 through 86 as if fully set forth herein.

88. Upon information and belief, the individual Defendants, Veneroni, Calvagna, A. Picone and L. Picone (collectively, the "Individual Defendants") are officers, owners or members of Defendant Credit Smart.

89. Upon information and belief, at all relevant times herein, the Individual Defendants exerted dominion and control over the corporate Defendant, Credit Smart, including failure to observe corporate formalities, inadequate capitalization of Credit Smart, personal use of corporate funds of Credit Smart, among other things.

90. Upon information and belief, as alleged above, the Individual Defendants took money paid to Credit Smart by accounts, which money should have been paid over to Plaintiff under the Agreement, and used such money for their own personal activities, causing Credit Smart to breach of the Agreement with Plaintiff.

91. Upon information and belief, the Individual Defendants caused Credit Smart to enter into its Agreement, despite knowledge that Credit Smart would not have sufficient capital to fulfill its repurchase obligations to Plaintiff, as set forth in §6.1 of the Agreement, due to the improper use of corporate funds by the Individual Defendants for personal use.

92. Upon information and belief, as a result of the dominion and control exerted by the Individual Defendants over Credit Smart, Credit Smart is under-capitalized, has paid money to the Individual Defendants which rightfully belongs to Plaintiff, and Credit Smart cannot perform its financial obligations to Plaintiff under the Agreement.

93. Upon information and belief, such dominion and control of Credit Smart by the Individual Defendants is an abuse of the privilege of doing business in the corporate form, in order to perpetuate a wrong directed at Plaintiff and others, such that a Court must intervene.

94. Upon information and belief, the Individual Defendants undertook actions in bad faith.

WHEREFORE, Plaintiff requests that the Court enter an order and judgment against Defendant:

(A) On the first cause of action in an amount to be determined at trial, but not less than $100,000.00;

(B) On the second cause of action in an amount to be determined at trial, but not less than $100,000.00;

(C) On the third cause of action in an amount to be determined at trial, but not less than $150,000.00;

(D) On the fourth cause of action in an amount to be determined at trial, but not less than $150,000.00;

(E) On the fifth cause of action in an amount to be determined at trial, but not less than $325,000.00;

(F) On the sixth cause of action in an amount to be determined at trial, but not less than $475,000.00;

(G) Punitive damages in an amount to be proven at trial, interest, reasonable attorneys' fees and costs of this action; and

(H) For such other relief as the court may deem just and proper.

Dated: White Plains, New York
November 19, 2014

Yours, etc.

By: /s/ John T.A. Rosenthal
_____
Kevin J. Harrington [KH-5027]
John T.A. Rosenthal [JR-4819]
HARRINGTON, OCKO & MONK, LLP
*Attorneys for Plaintiff*
81 Main Street, Suite 215
White Plains, NY 10601
Tel. (914) 686-4800
Fax (914) 686-4824
kharrington@homlegal.com
jrosenthal@homlegal.com

TO: Michael Salomon, Esq.
Law Offices of Zemsky & Salomon, P.C.
*Attorneys for Defendants*
33 Front Street, Suite 207
Hempstead, NY 11550
Tel. (516) 485-3800
Fax (516) 485-3280
Michael@zemskyandsalomon.com